THE NORTHERN TRUST COMPANY, Trustee, Plaintiff-Appellee, *v.* BERNICE S. WINSTON *et al.*, Defendants.—(BERNICE S. WINSTON, Defendant-Appellant.)

(No. 60194;

First District (4th Division)—September 10, 1975.

Swidler, Patt & Swidler, of Chicago, for appellant.

Pauker & Griffith, Ltd., of Chicago (David H. Pauker and James D. Griffith, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This suit was commenced by The Northern Trust Company, as successor trustee under a declaration of trust created by Philip A. Winston, now deceased, to construe the trust. Under the terms of the trust, the right to the use and occupancy of a condominium located at 1040 North Lake Shore Drive in Chicago, was given to Bernice S. Winston, the widow of Philip A. Winston, and appellant herein, subject to certain conditions and liabilities. The issue of construction presented was whether under the terms of the trust the widow was obligated to pay the unpaid mortgage payments on the property as they became due after the death of her husband while she occupied the premises. A further issue presented was whether the widow's attorneys' fees should be charged against the trust estate. After a trial, a decree was entered declaring that the widow was obligated to make the mortgage payments, and further denying the petition of the widow's attorneys for the allowance of fees. An appeal was thereupon taken to this court.

On or about November 18, 1970, Philip A. Winston and Bernice S. Winston, the latter then known as Bernice S. Johnson, anticipated marriage. Each had previously been married to another for a long period of time and had been widowed. Both had grown children as a result of their previous marriages, and both also had considerable property of their own.

On November 18, 1970, Philip and Bernice executed a prenuptial agreement wherein they recited their respective net worth and income and mutually released all rights "which each might otherwise acquire in the property and estate of the other by reason of their contemplated

marriage * * *." The prenuptial agreement further includes the following provision, pertinent to this appeal:

> "(a) PHILIP contemplates entering into a Trust Agreement under which PHILIP will be Settlor under the terms of which certain benefits will be provided for BERNICE. This Agreement shall not be construed as, or be deemed to require, a waiver or renunciation by BERNICE of the terms of said Trust Agreement."

Schedules appended to the prenuptial agreement set forth with specificity the considerable property owned by Philip and Bernice. Included in the schedule of Philip's property is the recital that he owned:

> "Apartment 21C, Carlyle-Condominium, subject to unpaid principal balance on mortgage dated October 21, 1963 to Dovenmuehle, Inc. as mortgagee for $48,500.00 on which there is principal balance of $43,303.58 owing, payable each month with final balance due 12/1/88: Cost of apartment plus built-ins approx. $100,000.00 less Mtg.'"

On or about the same day that the prenuptial contract was executed, Philip also executed the trust agreement "contemplated" in the prenuptial contract, and in which he transferred to himself as trustee certain scheduled personal property and his condominium apartment referred to above. In Article Fifth of the declaration of trust Philip reserved "the right to modify, amend or revoke this trust in whole or in part at any time by filing a written instrument with the trustee," and "the right at any time, by written instrument filed with the trustee, to alter or divest the interests of or change beneficiaries and with the trustee's written consent to amend this trust without limitation in any other respect." Article Twelfth of the declaration of trust, a construction of which this appeal primarily centers around, provides in full (and as amended by Philip Winston later on September 3, 1971):

> "TWELFTH: From and after my death, the right to use and occupy said Apartment 21C at the Carlyle and have the exclusive use and enjoyment of my drapes, floor coverings, furniture, fixtures and other personal property contained in said apartment, if it is then a part of the trust estate, shall inure to the benefit of my intended wife BERNICE S. JOHNSON, if we are married. Under such circumstances she shall be entitled as a widow to the use and occupancy of said apartment and have the exclusive use and enjoyment of my drapes, floor coverings, furniture, fixtures and other personal property contained in said apartment for and during her natural life *subject to the same terms, conditions and liabilities imposed upon me as owner of said condominium and to which said BERNICE agrees by taking possession and exercising her*

> *rights hereunder, i.e., she is to pay the bills for electricity, the monthly and other assessments, if any, by Carlyle Building Management and real estate taxes assessed against said apartment.*
>
> However, she shall not rent, or sub-let nor allow any other person, including her son ROBERT S. JOHNSON and his family to use and occupy said apartment under any circumstances. In the event of the death of said BERNICE S. JOHNSON or if she fails to continue to live in and occupy said apartment as herein provided (except for winter vacations not exceeding four months in any one year) or fails to assume the terms, conditions and liabilities herein imposed upon her, all rights to possession of said Apartment 21C at the Carlyle shall immediately inure and revert forthwith to the successor trustee who shall have the right to immediate possession thereof and to sell said condominium apartment * * * for cash or partly for cash and partly for credit at the market price thereof at that time—subject to the terms of the Carlyle building condominium agreements that I have or will sign. My daughter BEVERLY W. SCHOR shall have the right of first refusal to purchase said apartment." (Emphasis added.)

The only other amendment to the trust, executed June 11, 1971, provides *inter alia* that The Northern Trust Company act as successor trustee in the event of Philip's death.

Philip A. Winston and Bernice S. Johnson were married in November 1970, shortly after the prenuptial agreement and trust agreement were executed. Philip died approximately 14 months later on January 4, 1972, thereby effectuating the trusteeship of The Northern Trust Company. He left surviving him his widow Bernice, his daughter Beverly W. Schor, and his son Perry L. Winston, all of whom had an interest in the trust.

A dispute arose when Bernice took the position that, under the terms of the prenuptial contract and Article Twelfth of the trust agreement, she was not obligated to assume mortgage payments on the Carlyle condominium while she occupied it after her husband's death. The trust company as trustee therefore sought guidance from the court as to her liability and filed its complaint asking the court to construe the trust.

The court in its decree focused first on the language of Article Twelfth of the declaration of trust, which indicates that the widow has the right to use and occupy the Carlyle condominium "subject to the same terms, conditions and liabilities imposed upon [Philip] as owner * * * *i.e.*, she is to pay the bills for electricity, the monthly and other assessments, if any, by Carlyle Building Management and real estate taxes assessed against said apartment." The court found that this language was "of such an ambiguous nature that it was necessary for the Court to construe the

same" and to consider extrinsic evidence as to whether the language contemplated the widow paying the mortgage. The extrinsic evidence the court considered included the prenuptial agreement, wherein Philip Winston listed the Carlyle condominium as an asset, but also set forth the mortgage indebtedness thereon, thus indicating to Bernice that the mortgage was a "liability imposed upon him as owner."

Other extrinsic evidence considered by the court included the testimony of Perry Winston, son of the deceased. He stated his occupation as a real estate broker and testified that his father and he discussed the trust agreement on or about December 18, 1971, while alone in his father's apartment. His father was suffering from cancer at the time. The elder Winston asked Perry to read the trust agreement aloud to him so he could be assured Perry understood it. When Perry reached the pertinent portion of the Twelfth Article and read "i.e." as meaning "that is," his father stopped him and said "No, that is 'for example.'" Perry responded that "i.e." meant "that is." His father again responded he meant "for example" and indicated that he meant his wife to pay the mortgage as well as the things listed there, since it was part of the liabilities imposed upon him as owner that she would have to assume. Perry then asked his father to clarify that section, and his father began making notes on an envelope.

Perry further testified that the envelope was discovered after his father's death. It was admitted into evidence at trial. On the envelope there was scribbled in red ink:

> "In default of making payments she forfeits all right to possession —exclude visiting by him not allowed—she pays entire payment on mortgage, principal, interest, and real estate taxes—payable to the estate and not to Dovenmuehle as there is no interest for her to claim on equity at any time. These payments will offset wear, tear, and on depreciation."

A couple of days later, on December 22, 1971, Perry Winston testified that he spoke to his father on the telephone and asked if he had taken care of the clarification they had spoken about. His father replied "I'm writing it down, doing it right now, addendum to trust, Bernice to pay rent equal to mortgage and all other expenses," and he said "It's done." Philip Winston passed away a week later, on January 4, 1972.

The court finally considered other items of extrinsic evidence which, according to testimony, had been found in Philip Winston's office desk and contained notations made in his handwriting. One was a stenographic notebook entitled in handwriting "Memo Book—items to be attended to" and the final entry in which was the following: "Addendum to Trust effective December 22, 1971; Bernice to pay: Rent = mtg. + all other

expenses!" A second item was a personal appointment calendar book containing two pieces of paper slipped into a pocket in the back of the book. The two pieces of paper contained a handwritten list of "Abbreviations and Corrections." On the first sheet of paper there appears "I.E.—For Example" and on the second sheet there appears "I.E.—That is."

The court, considering the evidence presented, decreed that Philip Winston intended in Article Twelfth of the declaration of trust to impose on his widow the obligation of paying the mortgage while she occupied the condominium.

The appellant first disagrees with the court's approach in construing the declaration of trust as the main document, and instead would have us focus on the prenuptial contract, of which Article Twelfth of the declaration of trust is considered a part. The appellant stresses that the prenuptial contract granted "certain benefits" to Bernice, which were to be contained in the trust agreement executed contemporaneously with the prenuptial contract. These benefits, contained in Article Twelfth of the trust agreement, amounted to the right to occupy the condominium, and, it is urged, vested in Bernice with the execution of both documents. It is therefore argued that, after both documents were executed as originally submitted and the marriage consummated, no changes in the declaration of trust, even if scrupulously made in the manner prescribed by Article Fifth thereof, could alter Bernice's rights unless she willingly participated in causing a novation to occur.

We must register disagreement with the appellant's approach. It is evident that the prenuptial agreement is a renunciation by the couple of any right or interest in each other's property in contemplation of their marriage. The purpose of the paragraph in that agreement which indicates that "certain benefits" would be provided for Bernice in a separate trust agreement, and that the prenuptial agreement should "not be construed as, or be deemed to require, a waiver or renunciation by Bernice of the terms of said Trust Agreement," was to expressly preclude any later contention that the waiver of rights in the prenuptial contract included a waiver of any benefit Bernice *might* receive from Philip by virtue of the trust agreement. It does not appear to have been inserted for the purpose of affirmatively vesting Bernice with rights, and Bernice and her attorney, who viewed the prenuptial contract along with the trust agreement before she signed both (as was testified to) could not have reasonably so believed. The trust agreement itself provided that it was fully revocable and amendable by the settlor, Philip. Furthermore Article Twelfth thereof, granting Bernice the right to occupy the condominium, acknowledged that such right would inure if the condominium was "then a part of the trust estate" at Philip's death—further indicating

Philip retained the right to deal with the condominium as he saw fit until his death. Even after his death, Bernice's right to use the condominium was not an unfettered "benefit," but rather subject to various conditions and restrictions, including the assumption of certain monetary obligations. These conditions are not deemed by the widow to impinge the "benefit" purportedly vested in her by the prenuptial contract, but the obligation of paying the mortgage is deemed by her to do such. We can only conclude from the record that Philip never intended by the term "benefits" in the prenuptial contract to give his wife-to-be the condominium free and clear of all expenses, and that she understood that fact.

Moreover, as we perceive the case, it is difficult to understand the importance of the appellant's initial argument. The question here is not really whether Bernice could have been divested of any benefits after execution of the prenuptial contract and trust agreement—for she still retains the right to occupy the Carlyle condominium subject to certain conditions contained in the trust as it was originally drawn—but whether the benefit of occupying the condominium without assuming payment of the mortgage was intended to be conferred by her husband *at the time the trust was created.* In conformity with this approach, the trial court specifically found that the written notations offered into evidence did not amount to an amendment of the declaration of trust, divesting the widow of a benefit she had originally been granted. They were used, along with the other evidence, only to determine what Philip Winston intended in Article Twelfth of the trust at the time it was authored. Addressing herself to this issue, the appellant urges that the intention of the settlor as embodied in the language of Article Twelfth is not unclear, and that certain of the extrinsic evidence should not, in any event, have been considered by the court.

We must thus determine first whether the language of the trust is indeed ambiguous and, if so, what evidence could properly be considered in construing it. We are aware that rather than to determine which technical rule of construction can be applied to the facts and adopted regardless of the stated and apparent intention and desire of the settlor, the paramount concern is in fact to determine the intention of the settlor. *Storkan v. Ziska,* 406 Ill. 259, 94 N.E.2d 185.

■■ We first concur with the trial court that the trust was ambiguous regarding the obligation of making mortgage payments. The language of Article Twelfth that Bernice had the right to use the condominium subject to liabilities "imposed upon [Philip] as owner" would, in common parlance, clearly and decisively contemplate assumption of mortgage payments by her. This emphatic language, however, followed later by the abbreviation "i.e." preceding an enumeration of certain other

items, makes Philip's intention sufficiently unclear to justify the court in looking beyond that language to resolve the ambiguity in meaning.

Having determined that an ambiguity does exist, there can be little question that the extrinsic evidence considered by the trial court, and outlined above, when viewed in toto, emphatically reveals that Philip Winston intended Bernice to make mortgage payments and adequately supports the trial court's decree. But we must now entertain the question of which of that evidence is properly available for consideration in construing the trust.

The appellant contends without elaboration that, assuming the case required the consideration of extrinsic evidence of intention, such evidence would have to be limited only to the circumstances at the time the promise was made and all subsequent events, notations and conversations would have to be disregarded by the court, citing 5 Callaghan's Illinois Evidence § 9.66 at 191 (1964), which deals with "Extrinsic and Parol Evidence" in regard to wills. This argument is presumably directed at the extrinsic evidence consisting of Perry Winston's testimony regarding conversations he had with his father shortly before his death and the written notations said to have been made by the settlor.

■■ We first must acknowledge that it has been generally stated that statements of a testator, either before or after the making of a will, cannot be received to prove what was intended by the written words of the will. (*Quigley v. Quigley*, 370 Ill. 151, 18 N.E.2d 186. But see Annot., 94 A.L.R. 26, at 263 *et seq.* (1935).) However, although a similar rule has been implied in regard to subsequent declarations by the settlor of a trust (see *Continental Illinois National Bank & Trust Co. v. Art Institute,* 409 Ill. 481, 100 N.E.2d 625), it would appear that any such rule is not an inflexible one where an ambiguity in the meaning of the trust is apparent (see Annot., 51 A.L.R.2d 820 (1957)). Furthermore, even in regard to a will, other types of subsequent events have been considered if they are indicative of the testator's intent at the time of the execution of the will. (*Weir v. Leafgreen,* 26 Ill.2d 406, 186 N.E.2d 393.) The complained of evidence in the case at bar elucidated what Philip Winston intended by the subject language of the trust at the time he executed it.

■■ In any event, however, the oral testimony of Perry Winston about conversations he had with his father after the trust was executed, and in which his father clearly indicated his intention to make Bernice responsible for the mortgage payments, was objected to at trial by appellant's counsel on the ground of hearsay, which objection was overruled. No objection was made in regard to its competency in other respects. The list of "Abbreviations and Corrections" disclosing Philip Winston's confusion as to the meaning of the abbreviation "i.e." was admitted without

any objection at trial. As recently stated in *Illinois Education Association Local Community High School District 218 v. Board of Education,* 23 Ill.App.3d 649, 320 N.E.2d 240, 246, objections not raised at trial and objections upon a different basis than made at trial cannot be asserted on appeal. And since a reviewing court may consider the entire record and should affirm if any basis exists therein for so doing (*Owen v. Pret' A Porter Boutique, Inc.,* 15 Ill.App.3d 438, 302 N.E.2d 672), the above evidence alone might thus be deemed by us sufficient to sustain the court's decree.

Additionally, however, the appellant does not dispute that in construing a trust instrument the court may look to extrinsic evidence in the form of surrounding circumstances at the time the instrument was executed to the extent that they may aid in determining the settlor's intention in using certain language. (*Continental Illinois National Bank & Trust Co. v. Clancy,* 18 Ill.2d 124, 163 N.E.2d 523.) The record reveals that the declaration of trust was executed contemporaneously with a prenuptial agreement, which was admitted into evidence by the appellant herself, in contemplation of her marriage to Philip. The prenuptial agreement signed by both Philip and Bernice includes a schedule of assets owned by each at the time. A major asset of Philip's which is included in the trust, was the Carlyle condominium. It is listed in the prenuptial contract schedule as an asset "subject to unpaid principal balance on mortgage dated October 21, 1966 to Dovenmuehle, Inc. as mortgagee for $48,500.00 on which there is principal balance of $43,303.58 owing, payable each month with final balance due 12/1/88 * * *." This would indicate, as the trial court found, that Philip considered the mortgage a "liability" upon him "as owner of" the condominium at the time the trust agreement was executed. Furthermore, the schedule reveals Bernice to be a wealthy woman, whose estate was greater than Philip's. The mortgage payments of $317.12 monthly would clearly not represent a major expense to her nor impose undue hardship on her. Also, by the terms of the trust, the sale or disposition of the condominium was and is prevented from occurring while occupied by Bernice. That means that the children of Philip have been denied the income from a substantial sum of money and may be denied distribution of a portion of the trust corpus for a long time. It would not appear to be the intention of Philip to impose the burden of the monthly mortgage payments on the trustee rather than Bernice, for to do so would further diminish the income to the principal beneficiaries of the trust, Philip's children.

■■ We therefore find adequate evidence in the record to substantiate the court's decree that Philip Winston intended in Article Twelfth of his declaration of trust to impose upon Bernice the obligation of making the

mortgage payments as they became due while she occupied the condominium.[1] We note in closing that, as alluded to earlier, even with assumption of the monthly mortgage payments, Bernice is receiving the benefit contemplated by Philip. She has the right to use the condominium and all of the furniture and furnishings for her life, during which time none of them can be sold. It cannot be seriously disputed that the payments required of her by Philip amount to considerably less than would be the cost of a comparable apartment.

A further contention on appeal is that the trial court was in error in denying as a matter of law appellant's attorneys' fees as a charge against the trust estate of Philip A. Winston.

■■ Both parties direct our attention to the Illinois statute regarding costs (Ill. Rev. Stat. 1973, ch. 33) and specifically to section 18, which makes the award of costs (by construction including fees) discretionary where not otherwise specified by law, stating:

> "* * * and in all other civil cases, not otherwise directed by law, it shall be in the discretion of the court to award costs or not * * *."

The trial court's exercise of discretion in this matter will not be reviewed except for an abuse thereof. *Hockersmith v. Cox,* 407 Ill. 321, 95 N.E.2d 464.

■■ As appellant has noted, a trust may be lawfully required to bear the necessary expenses of its own preservation. (*Abend v. Endowment Fund Com.,* 174 Ill. 96, 50 N.E. 1052.) She also cites a portion of 20 Am. Jur.2d *Costs* § 84 (1965), which, in more detail, provides:

> "A court of equity * * * may, in its discretion, order an allowance of counsel fees to a complainant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him. The allowance is made in such cases as an item in 'costs as between solicitor and client,' a technical term employed to designate expenses recoverable under equitable principles as distinguished from items of costs between the parties. The rule rests upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as to himself, those who have shared in the benefits should contribute to the expense. This principle applies

[1] We find it unnecessary, among other things, to consider, as appellant does, whether or not Philip created a life estate, or a property right akin to homestead, in Bernice by the terms of the trust in determining her obligation to assume mortgage payments.

> not only in cases where a fund is created or increased, but also where certain claims to a fund are defeated, thereby increasing the share of those persons who have a common interest with the complainant in the fund."

It is undisputed that the claims made by appellant, if allowed, would not inure to the benefit of the other trust beneficiaries. Indeed it would be to their detriment. We find no abuse of discretion in the trial court's order denying the allowance of fees.

Finding no error in the decree of the circuit court, it is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.