ESTATE OF Arthur S. KRAUS, Deceased, Renee Kraus, Executrix, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 88–2365.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1989.

Decided May 22, 1989.

**598**

Lawrence C. Rubin, Arvey Hodes Costello & Burman, Chicago, Ill., for petitioner-appellant.

Thomas R. Lamons, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

After disallowing a marital deduction under section 2056 of the Internal Revenue Code of 1954 (as amended prior to decedent's death), the Commissioner of Internal Revenue (Commissioner) increased by $152,279.37 the estate tax assessment against the Estate of Arthur S. Kraus (Estate).[1] The Estate petitioned the Tax Court for review of the assessment and after trial the Tax Court upheld the deficiency determination. The Estate then moved for reconsideration based on newly discovered evidence. Tax Ct.R. 161. The Tax Court denied the motion. We affirm the Tax Court's ruling on the assessment, reverse the Tax Court's denial of the motion for reconsideration, and remand the case for reevaluation in light of the newly discovered evidence.

## I. FACTUAL BACKGROUND

Arthur S. Kraus, a certified public accountant, created the Arthur Kraus Insurance Trust in 1970. The insurance trust provided for the creation of a marital trust fund upon Arthur's death. As created, the terms of the marital trust satisfied the requirements of section 2056 and would have entitled the Estate to a marital deduction after Arthur's death. However, Arthur amended the insurance trust on June 6, 1977. Certain changes wrought by the Estate and Gift Tax Reform Act of 1976[2] were the catalysts for the amendment. The 1977 amendment failed to provide Arthur's surviving spouse a general power of appointment over the marital trust. Without the general power of appointment, the Estate is not entitled to a marital deduction. Arthur made no further changes to the insurance trust before his death on October 17, 1981.

Based on the failure of the amended trust to provide Arthur's surviving spouse with a general power of appointment, the Commissioner disallowed the Estate's claimed marital deduction and on October 11, 1985, increased by $152,279.37 the estate tax assessment against the Estate.

---

1. 26 U.S.C. § 2056. Although section 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, redesignated the Internal Revenue Code of 1954 as the Internal Revenue Code of 1986, the events giving rise to this litigation antedate the Tax Reform Act. Therefore, all references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

2. Pub.L. No. 94–455, 90 Stat. 1804.

Contending that the general power contained in the original trust was unintentionally converted to a limited power as a result of a scrivener's error in the 1977 amendment, the Estate petitioned the chancery division of the Cook County Circuit Court for reformation of the amended trust on October 18, 1985. The Estate argued that based on changes effected by the Tax Reform Act of 1976, Michael Rotman, the attorney who drafted the initial trust, sent letters to all of his clients, including Arthur Kraus, and suggested amendments to their trusts. Altering the power of appointment was not one of the suggested changes. Attorney Rotman, who prepared the amendment, provided an affidavit to the Illinois court stating that the error in the appointment clause resulted from the inadvertent omission of certain key words when the amendment was transcribed from a standard form to his word processor.[3] Rotman was Arthur's cousin and is an experienced tax attorney. He worked for the Internal Revenue Service from 1962 to 1965 and then entered private practice. Since 1965, he has concentrated his practice in estate planning and probate matters. On December 3, 1985, the Illinois court accepted the Estate's evidence and reformed the amended trust to grant Arthur's surviving spouse a general power of appointment.

After the Commissioner refused to withdraw the $152,279.37 assessment, the Estate petitioned the Tax Court to review the Commissioner's assessment. The Tax Court judge heard testimony, reviewed documentary evidence, and upheld the assessment. Among its many findings, the Tax Court found that Arthur Kraus "was aware of the language required to provide for a general power of appointment to qualify under section 2056," the Illinois court's order was not binding for federal tax purposes, the amended trust not only omitted language necessary to create a general power but also included language

necessary to create a special power, and the Estate provided no evidence "to corroborate any of Rotman's testimony." The Tax Court upheld the deficiency assessment.

The Estate, in its motion for reconsideration, alleged that it had newly discovered evidence that would corroborate Rotman's testimony. Rotman had testified that the error contained in the 1977 amendment was also reflected in several other trusts amended during the same time frame. Rotman's excuse for failing to produce any of the other documents during trial was that when he discovered the error, he corrected the trusts and then destroyed the erroneous amendments to avoid confusion. In his affidavit supporting the Estate's motion for reconsideration, Rotman alleges that he diligently searched his files prior to trial but was unable to find other trusts with similar errors. Only after trial when he was working on an unrelated matter did he find another trust with the same error. Rotman claims that this erroneous trust was not destroyed and had not been found previously because it had been misfiled. The Commissioner opposed the Estate's motion for reconsideration and the Tax Court denied the motion. The Estate appeals the deficiency assessment and the Tax Court's denial of the motion for reconsideration.

## II. ANALYSIS

### A. Deficiency Assessment

#### 1. Standard of Review

We review the Tax Court's findings of fact and application of law to the facts using a "clearly erroneous" standard of review. *See Yosha v. Commissioner*, 861 F.2d 494, 499 (7th Cir.1988); *Eli Lilly & Co. v. Commissioner*, 856 F.2d 855, 861 (7th Cir.1988); *Levin v. Commissioner*, 832 F.2d 403, 405 (7th Cir.1987); *Standard Office Bldg. Corp. v. United States*, 819

---

3. Rotman attempted to produce in the Tax Court the form from which he had copied. He was unable to do so because the form has since been revised and he did not have a copy of the old form. In addition, Rotman contacted the

publisher, the local bar association, and several law school libraries in an attempt to locate the form. He was unable to produce a copy of the form from any source.

F.2d 1371, 1373–74 (7th Cir.1987); *Wright v. United States,* 809 F.2d 425, 428 (7th Cir.1987); *Illinois Power Co. v. Commissioner,* 792 F.2d 683, 685, 687 (7th Cir. 1986); *Mucha v. King,* 792 F.2d 602, 604–06 (7th Cir.1986). For the reasons stated in *Mucha,* 792 F.2d at 604–06, and subsequent cases, we reject the taxpayer's argument that we should employ a *de novo* standard when we review the Tax Court's application of law to the facts. *But cf. Walter v. Commissioner,* 753 F.2d 35, 38 (6th Cir. 1985); *Manocchio v. Commissioner,* 710 F.2d 1400, 1402 (9th Cir.1983). The overwhelming authority of *Mucha* and its progeny mandates use of the "clearly erroneous" standard in the Seventh Circuit. Under this standard, we first review the Tax Court's choice of applicable law *de novo* and then, in light of the evidence admitted, we determine whether the result reached was clearly erroneous.

The taxpayer argues that there are two methods of employing the clearly erroneous standard—broad and narrow. Under the broad method, appellate courts show little deference to district court findings of fact that are based only on undisputed testimony or documentary evidence. *See, e.g., Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277 (7th Cir.1977); *Wigginton v. Order of United Commercial Travelers of Am.,* 126 F.2d 659 (7th Cir.), *cert. denied,* 317 U.S. 636, 63 S.Ct. 28, 87 L.Ed. 513 (1942); *see also Orvis v. Higgins,* 180 F.2d 537 (2d Cir.), *cert. denied,* 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950). The rationale for broad review is that appellate courts sit in just as good a position as trial courts when it comes to evaluating uncontradicted evidence. *Flowers,* 552 F.2d at 1284; *Orvis,* 180 F.2d at 539. Findings based on disputed evidence or involving credibility determinations, on the other hand, necessitate more deference to the trial court and appellate courts thus review these findings more narrowly. *Orvis,* 180 F.2d at 539–40. The taxpayer argues that we should employ the broad method of review. The Supreme Court expressly rejected varying methods of clearly erroneous review in *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). *See also Eli*

*Lilly,* 856 F.2d at 861; *Ginsu Prod., Inc. v. Dart Indus., Inc.,* 786 F.2d 260, 262–64 (7th Cir.1986). The Supreme Court held that there was no principled distinction between findings of fact based on credibility determinations and findings of fact based on physical or documentary evidence. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. Further, the Supreme Court held that appellate courts should show deference to the trial court's findings of fact without regard for the type of evidence on which the trial court based its findings. *Id.*

2. Tax Assessment Based on the Construction of a Trust

In reviewing the Tax Court's determination to uphold the deficiency assessment, our inquiry is limited. The parties do not dispute the application of the federal tax laws to these facts. The Commissioner and the Estate agree that the amended trust, sans reformation, would not qualify for the marital deduction. The parties also agree that with the addition of the missing language, the reformed, amended trust would qualify for the marital deduction.

The parties do, however, disagree about reformation of the trust under Illinois law. The Estate claims that the trust was properly reformed by the Illinois court and should have been reformed by the Tax Court. The Commissioner argues that the trust was not properly reformed and should not have been reformed under Illinois law. Our job is to determine *de novo* whether the Tax Court applied the governing Illinois law and then to determine whether the Tax Court's application of Illinois law to these facts was clearly erroneous.

■ The Illinois court reformed the trust under Illinois law before trial in the Tax Court. A lower state court's reformation, however, is not binding on the Tax Court because only the state's highest court can make a ruling on state law that binds the federal courts. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *see also Greene v. United States,* 476 F.2d 116, 119 (7th Cir.1973). The Tax Court was only

required to give "proper regard" to the Illinois court's ruling. *Estate of Bosch,* 387 U.S. at 464, 87 S.Ct. at 1782. After reviewing the record, we find that the Tax Court gave "proper regard" to the state court's ruling, despite the fact that the Tax Court reached a result different from that of the state court.

Under Illinois law, a court may reform a trust based on a mistake. *See Pernod v. American Nat'l Bank & Trust Co.,* 8 Ill.2d 16, 20, 132 N.E.2d 540, 542 (1956); *Law v. Bank of Galesburg,* 28 Ill.App.3d 98, 100, 327 N.E.2d 609, 611 (1975); *Mortimer v. Mortimer,* 6 Ill.App.3d 217, 222, 285 N.E. 2d 542, 546 (1972). The party advocating reformation must establish the mistake with "clear and convincing" evidence. *See Pernod,* 8 Ill.2d at 20, 132 N.E.2d at 542; *Mortimer,* 6 Ill.App.3d at 222, 285 N.E.2d at 546. Moreover, despite the oft-stated sentiment that the paramount concern is to ascertain the intent of the settlor, *see, e.g., Northern Trust Co. v. Winston,* 32 Ill.App. 3d 199, 206, 336 N.E.2d 543, 548 (1975), "[t]he general rule is that if the words are written as the parties intended they should be written or supposed they were written when the instrument is signed, then no matter how much they may be mistaken as to the meaning of those words no relief can be granted, either at law or in equity," *Pernod,* 8 Ill.2d at 21, 132 N.E.2d at 543. *See also Law,* 28 Ill.App.3d at 100, 327 N.E.2d at 610. The party seeking to overcome the presumed correctness of a writing must strongly corroborate testimony that conflicts with the written instrument. *See Pernod,* 8 Ill.2d at 21, 132 N.E.2d at 542. The court may consider "extrinsic evidence in the form of surrounding circumstances at the time the instrument was executed." *Northern Trust Co.,* 32 Ill. App.3d at 208, 336 N.E.2d at 549. "Whether the evidence offered to support the claim of mutual mistake is sufficient to overcome the presumption is primarily a question the trier of fact must determine." *Law,* 28 Ill.App.3d at 100, 327 N.E.2d at 610–11. The Tax Court, contrary to the decision of the Illinois court, found that no mistake was proven sufficient to warrant reformation of the trust.

We cannot say, given the whole record, that the Tax Court's factual findings and application of Illinois law to the facts were clearly erroneous on this issue. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). The Tax Court considered stipulated facts, the testimony of attorney Rotman and the deceased's surviving spouse, the unamended 1970 trust, and the 1977 amendment. The Tax Court then found that the "[d]ecedent was aware of the language required to provide for a general power of appointment," the 1977 amended trust explicitly created a special rather than a general power of appointment, and Rotman's testimony was largely uncorroborated. The Tax Court ruled that the Estate failed to establish a mistake with clear and convincing evidence.

The Estate argues that the Commissioner failed to contradict the evidence offered by the Estate, especially Rotman's testimony. The Estate misses the point. The amended trust, precatory language regarding an intent to create a marital deduction aside, speaks for itself. The amended trust created a special power in plain language. It was incumbent on the Estate to refute the plain language and presumed correctness of the trust. The Commissioner bore no burden on this issue. The Estate relied primarily on Rotman's testimony. Rotman testified that the amended trust was one of many mistakes he made. Yet the Estate failed to introduce any evidence of these other mistakes. Rotman's unsupported testimony was simply not enough to convince the Tax Court that a mistake warranting reformation had been made.

We have reviewed all of the evidence available to the Tax Court and while we might quibble about its finding that the decedent was aware of the language necessary for a marital deduction in light of the 1976 tax changes, we are not "left with the definite and firm conviction that a mistake

has been committed." *United States Gypsum Co.*, 333 U.S. at 394–95, 68 S.Ct. at 541–42. The Tax Court's decision to uphold the deficiency assessment was not clearly erroneous.

### B. *Motion for Reconsideration Based on Newly Discovered Evidence*

■ We review the Tax Court's denial of a motion for reconsideration using the abuse of discretion standard. *See Estate of Frieders v. Commissioner*, 687 F.2d 224, 228 (7th Cir.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983). The Estate based its motion on allegedly newly discovered evidence. Rather than rehash all the evidence considered by the Tax Court, we focus on its conclusions in light of the applicable Illinois law. The Estate argued that the amended trust mistakenly omitted the general power of appointment. To support this argument, the Estate relied primarily on the testimony of attorney Rotman, who drafted the initial trust and the amendment. The Tax Court rejected Rotman's testimony finding that it was largely uncorroborated. Corroboration of an interested party's testimony is crucial evidence in a reformation proceeding in Illinois. *See Pernod*, 8 Ill.2d at 21, 132 N.E.2d at 542.

The evidence the Estate offered in support of its motion for reconsideration strongly corroborates Rotman's testimony. In its motion, the Estate alleges that Rotman was contacted in late April 1988, after the trial had concluded. Emanual Schenk, an accountant, contacted Rotman and asked him to extend Harold Silver's trust for another year. Silver was a client of both Schenk and Rotman. When Rotman pulled Silver's trust from the file, he discovered copies of an amended trust containing the same error as the Kraus trust. He also found copies of letters sent to Silver in 1977 that asked him to review his trust based on the 1976 tax changes. This same type of letter had been sent to Kraus. The Estate moved for reconsideration based on the letters, the Silver trusts, and the supporting testimony of Silver and Schenk.

The Tax Court has held that decisions interpreting Rules 59 and 60 of the Federal Rules of Civil Procedure apply to motions for reconsideration and further trial under Rule 161 of the Rules of the United States Tax Court. *See Wheeler v. Commissioner*, 46 T.C.M. (CCH) 642 (1983). Under Rule 60 of the Federal Rules of Civil Procedure, a court shall grant a motion for reconsideration based on newly discovered evidence when

(1) the evidence was discovered following trial;

(2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;

(3) the evidence is not merely cumulative or impeaching;

(4) the evidence is material;

(5) the evidence is such that a new trial would probably produce a new result.

*United States v. Walus*, 616 F.2d 283, 287–88 (7th Cir.1980); *see also Mumford v. Bowen*, 814 F.2d 328, 330 (7th Cir.1986).

The Estate's uncontradicted affidavits establish that the evidence proffered was discovered following trial. These same circumstances also indicate that the Estate exercised due diligence in discovering this new evidence. Although Rotman searched his files for similar documents prior to and during trial, he did not find the Silver documents. He did not find them because they had been misfiled. Beyond that, he thought they had been destroyed. In any event, Rotman was not representing the Estate in the Tax Court and the Estate had no control over the confidential files of Rotman's other clients. Furthermore, although Silver and Schenk were probably available to testify during trial, their testimony did not become crucial until the documents were discovered after trial.

Most importantly, this newly discovered evidence strongly corroborates Rotman's testimony and corrects a deficiency in the evidence that influenced the Tax Court's decision. As a result, the evidence is not merely cumulative or impeaching. Instead, it is vitally material to show that a mistake occurred. In light of the Tax Court's concern about the lack of corroboration, we

find that the "newly discovered evidence," if believed, would change the result of the trial. The evidence thus passes muster under the five-prong test of *Walus* and the Tax Court therefore abused its discretion when it denied the Estate's motion for reconsideration based on this newly discovered evidence.

### III. CONCLUSION

The decision of the Tax Court upholding the deficiency assessment is AFFIRMED. The Tax Court's denial of the motion for reconsideration is REVERSED and the cause is REMANDED for admission of the newly discovered evidence and reconsideration.