PETER AND MARY PIETANZA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pietanza v. Commissioner
Docket No. 29531-87
United States Tax Court
T.C. Memo 1990-524; 1990 Tax Ct. Memo LEXIS 577; 60 T.C.M. (CCH) 948; T.C.M. (RIA) 90524; October 2, 1990, Filed Respondent's motions to revise and vacate will be denied. Michael D. Savage, for the petitioners. Joseph T. Chalhoub, Richard Goldman, and Terry W. Vincent, for the respondent. COHEN, Judge. COHEN
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT *578 AND OPINION This case was assigned to Special Trial Judge Buckley pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180 and 181. [1] After a review of the record, we agree with and adopt her opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: This matter is now before us on respondent's Motion under Rule 161 to Reconsider and Revise our opinion in Pietanza v. Commissioner, 92 T.C. 729 (1989), as well as respondent's Motion under Rule 162 to Vacate Order of Dismissal which was entered on April 5, 1989. A hearing was held on these two motions. Pietanza v. Commissioner, supra, originally came before the Court on cross-motions to dismiss *579 for lack of jurisdiction. We held in Pietanza that respondent had failed to prove the existence of a valid notice of deficiency where he presented only evidence of postal service Form 3877 indicating a mailing to petitioners and was unable to present a copy of the alleged notice of deficiency to the Court or to petitioners. Petitioners first started on their odyssey in search of the notice of deficiency after the receipt of a collection notice on September 16, 1985. They assiduously continued their search until the time of filing their petition in this Court on September 1, 1987. Not until respondent filed his objection to petitioners' motion to dismiss on October 26, 1987, did respondent ever state positively that there was a notice of deficiency in existence which had been mailed to petitioners. Respondent, however, was unable to provide a copy of a notice of deficiency to us. In our opinion at 92 T.C. at 729, we held that the presumption of official regularity in the preparing and mailing of a notice of deficiency was overcome by facts in this matter which indicated to us certain irregularities. Petitioners' motion to dismiss for lack of jurisdiction on *580 the ground that there was no valid notice of deficiency was granted and accordingly, respondent's cross-motion to dismiss was denied. At the hearing on the cross-motions to dismiss, the Court was concerned about the inability of respondent to produce a notice of deficiency. At the end of the hearing, the Court asked respondent: "On any of these questions, have you found a case where in fact there was not apparently in existence a copy of the notice of deficiency?" The Court continued: "The Court would request the parties to see if they can locate any authority where the only information before the Court is the existence of a Form 3877 and there is no deficiency notice which either party is able to present to the Court." The comments of the special trial judge made it clear to the parties that a pivotal question to the Court was the existence of a copy of a notice of deficiency. None, nevertheless, was supplied to the Court. Respondent's memorandum after the hearing, filed May 2, 1988, continued to contend that the existence of the Form 3877 was sufficient to establish that a notice of deficiency was in existence and had been mailed. Respondent went on, however, to include in his *581 memorandum affidavits together with a copy of a draft of a notice of deficiency in regard to the Pietanzas' 1980 tax year prepared by a revenue agent and retained in her files as a sample, "the sample notice" discussed in our opinion. We were unable to conclude, however, from the fact of the preparation of the "sample notice" that it had ever been approved or mailed to petitioners. Thus, we have already once allowed respondent to add to the record in this matter after the original hearing on the cross-motions. Our order of dismissal of April 5, 1989, for lack of jurisdiction was in favor of petitioners, respondent having failed to prove the existence of a notice of deficiency. Our order of dismissal was entered on April 5, 1989, and shortly thereafter counsel for respondent, Joseph T. Chalhoub, who was reviewing the case for the purpose of deciding whether respondent should recommend an appeal of the dismissal to the Department of Justice, felt (in his words) that something had been left undone. Shortly thereafter, he located the administrative file containing a copy of the notice of deficiency in the files of Special Agent Fred Ferreira of the Brooklyn District of the Criminal *582 Investigation Division (sometimes hereafter CID) of the Internal Revenue Service, where it had been since about August 1986. As a result of locating the notice of deficiency, respondent filed on May 1, 1989, the motions to revise and vacate, which we now have under consideration. Respondent now urges us to reconsider and revise our opinion and to vacate our dismissal order upon the grounds of newly discovered evidence. We agree that respondent has finally located the missing notice of deficiency. A hearing was held on respondent's motions. Our chore is to determine if this evidence in fact is "newly discovered." We note, parenthetically, that if we now admit the notice of deficiency, the probable result will be that we dismiss this case for lack of jurisdiction in favor of respondent, the petition having been filed outside the 90-day period set forth in section 6213. Rules 161 and 162 provide for the filing of motions for reconsideration of findings or opinion and to vacate or revise decision. Respondent's motions have been timely filed. *583 Rule 1(a) provides that."Where in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand." Accordingly, we have given some weight to decisions under the Federal Rules in regard to newly discovered evidence. Both respondent and petitioners have relied upon cases under the Federal Rules to support their contentions. It has been held that cases interpreting Rules 59 and 60 of the Federal Rules are precedents in regard to motions for reconsideration and vacating decisions under Tax Court Rules 161 and 162. Estate of Kraus v. Commissioner, 875 F.2d 597, 602 (7th Cir. 1989); Wheeler v. Commissioner, T.C. Memo. 1983-385. Rule 60(b)(2) of the Federal Rules of Civil Procedure allows a Court to grant a motion for reconsideration based upon newly discovered evidence. The Court must weigh the following factors: (1) the evidence was discovered *584 following trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that a new trial would probably produce a new result. See Estate of Kraus v. Commissioner, supra at 602; Gomez v. Chody, 867 F.2d 395 (7th Cir. 1989); United States v. Walus, 616 F.2d 283, 287 (7th Cir. 1980); United States v. Meyers, 484 F.2d 113 (3d Cir. 1973). It is apparent that the evidence in question here was located after the original hearing on the motion and after our court-reviewed opinion was served and order of dismissal entered. It is not merely cumulative or impeaching, it is material, and it is of such nature that its admission would probably produce a new and different result. However, it is clear that the "failure to learn must not have been caused by a lack of diligence." Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983). Thus, we must ascertain whether respondent, the movant, exercised due diligence to discover the notice of deficiency.
*585 As the moving party herein, respondent bears the burden of proving that he exercised due diligence in his efforts to discover the notice of deficiency. Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308 (1932); Baptist v. Commissioner, T.C. Memo. 1990-400. We consider the efforts of two attorneys for respondent, for the most part, in regard to whether respondent exercised due diligence in the search for the notice of deficiency. One of these attorneys was in the office of the District Counsel in Newark, the other in the Tax Litigation Division (formerly called the Procedural Review Branch) of Chief Counsel's office in Washington, D.C. We refer to them hereafter as the Newark attorney and the D.C. attorney. We now examine respondent's evidence regarding the search for the notice of deficiency. Our starting point must be the date upon which petitioners filed their petition with this Court, September 1, 1987. On the same date, petitioners filed their motion to dismiss. The case was then assigned to the Newark attorney who had commenced her position with District Counsel about one and a half years earlier. She received the legal file on *586 September 21, 1987, at which time it contained only copies of the papers filed in the Tax Court proceeding. She did not receive the administrative file which normally would contain petitioners' income tax return for the year in question as well as the notice of deficiency. Counsel for petitioners advised her by telephone that another attorney in her office had also been working on a different matter involving petitioners and through that source she was able to obtain the original income tax return filed by petitioners for 1980, although that attorney did not have the administrative file. She also received a printout which indicated that the other attorney had requested the administrative file from the Service Center in August of 1987. On September 21 she followed usual office procedure and requested a paralegal in Newark District Counsel's office to locate the administrative file from the Service Center; she repeated this request of the paralegal in October 1987 and then again in November 1987. All such requests were fruitless. She checked the Newark office 90-day section of the Internal Revenue Service to see if the notice of deficiency had been issued through it; that office *587 stated it had no record of the notice. In fact, the notice now produced indicates that it was prepared in the Newark office. A couple of weeks later, she called the Newark office again and at that time the Form 3877, indicating a mailing to the Pietanzas, was located. The Newark attorney was aware that petitioners' counsel had attempted to obtain information about a possible notice of deficiency through a Freedom of Information Act request. She had seen the letter written by counsel as well as the response from the Disclosure Officer that the documents requested "are all exempt from disclosure * * * in conjunction with statutory exemption cited in 26 U.S.C. 6103 (e)(7)." That section provides that "Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration." (Emphasis supplied.) The response did not indicate to the Newark attorney that the disclosure *588 officer might have any information regarding the missing administrative file and she made no inquiries of him. The Newark attorney was contacted by the attorney from the National Office of Chief Counsel who was to present respondent's position at the motions hearing in Washington, D.C., on March 30, 1988, and she discussed the case with him, outlining the efforts made to locate the administrative file. She continued working on the case after the hearing date on March 30, 1988, until respondent filed his post-hearing memorandum on May 2, 1988. The Newark attorney had seen the letters involving the Freedom of Information requests, but she failed to attempt to locate the administrative file through that source. Her testimony at the hearing on the pending motions was that the letters did not indicate to her that the disclosure officer might know the whereabouts of the administrative file. After respondent filed his post-hearing brief on May 2, 1988, the Newark attorney made no further efforts to locate the administrative file. There was no testimony presented at the hearing on the pending motions as to whether she discussed the problem of the missing file with any of her supervisors.
*589 The hearing on the cross-motions to dismiss was held in Washington, D.C. on May 30, 1988, and was handled by an attorney located in Washington, D.C. with the Tax Litigation Division of the Chief Counsel's office of the Internal Revenue Service. He had been in that position approximately four months. The D.C. attorney, whose assigned duties included arguing motions before the Tax Court, received the legal file in this matter some six days prior to the hearing. Upon his review of the file he noted the absence of the administrative file and the notice of deficiency. He reviewed all of the items in the legal file, and then telephoned the Newark attorney to review the steps which she had taken to locate the missing file. He also telephoned the Service Center as well as the examination division and appeals division, all in a futile search for the notice of deficiency. He also enlisted the support of his supervisor in attempting to locate the file from the Service Center and prepared a letter for his signature to the Service Center. There is no testimony that he discussed any other aspect of the case with his supervisor. After the March 30 hearing on the cross-motions, the D.C. *590 attorney continued the search for the missing documents. As a result of this search, he located the information regarding the "sample notice." He had read the Freedom of Information Act request and the response from the disclosure officer. At the hearing on the pending motions, he could not recollect whether he had communicated with the disclosure officer before or after the March 30 hearing, but sometime prior to filing his memorandum he spoke to the Newark Disclosure Office and was told that the disclosure case file involving petitioners indicated that the file had been sent to the Brooklyn disclosure officer. He then called the number he had been given for that office, discussed the case, received a call back that the administrative file had been at the Brooklyn Disclosure Office at one time, but that the notice of deficiency was not there, so he did not pursue that source any further. He left it to the Brooklyn Disclosure Office to check with Brooklyn Criminal Investigation Division. The person to whom he spoke stated that nobody at the Criminal Investigation Division could recall or was able to locate the file. Testimony at the hearing on the pending motions indicates that *591 if anyone at Brooklyn CID had been questioned about the Pietanza file it was neither the special agent assigned to the case nor his supervisor. Respondent's D.C. attorney's notes contained the telephone number of the Brooklyn Disclosure Office and a notation to the Brooklyn Criminal Investigation Division; however, he never attempted to contact CID directly. After he filed his memorandum on May 2, 1988, he made no further effort to search for the notice of deficiency, considering the case basically closed for his purposes. During all of this period, the administrative file in question had been in the Brooklyn Criminal Investigation Division of the Internal Revenue Service. Special Agent Thomas DiStefano is a supervisory special agent with the Brooklyn Criminal Investigation Division. He was aware that an investigation of petitioners was commenced in August 1986 and was closed out in April of 1987. While he knew that the Brooklyn CID had had the administrative file in the past, he did not know that it was still in his office. Further, he was unaware from which IRS office the file had been obtained by his office. He did, however, aver that files were not supposed to be retained *592 in CID once a matter was discontinued and that this matter had been discontinued in April of 1987. The first and only query Mr. DiStefano received in regard to the missing administrative file was from his chief in regard to Mr. Chalhoub's request of the Brooklyn district disclosure officer that someone from CID call him. No one else had ever inquired of him about the file, even though it was a case in which he was the supervisor. Mr. DiStefano then requested Special Agent Ray Ferreira, the agent who had been assigned to the case, to search his records for the file. He was the third special agent assigned to this matter, and from December 1986, when it was assigned to him, he had never looked into the boxes in which various papers regarding the Pietanza matter were stored. Mr. Ferreira was unaware that the administrative file was located among the papers in his possession. The only person who asked him to look for the administrative file was Mr. DiStefano, his supervisor. He located it immediately, and it was sent on to Mr. Chalhoub. Respondent's burden is to show that the evidence was newly discovered or unknown until after the hearing and that such evidence could not with reasonable *593 diligence have been discovered and produced at the hearing. See Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989). We note, parenthetically, that we gave respondent considerable latitude by considering the information in regard to the "sample notice" which was presented after the original hearing but in connection with respondent's post-hearing memorandum. Respondent obviously is not in a position to contend that the evidence, the notice of deficiency, was unknown to him, since he contended throughout the first hearing that the notice of deficiency was in existence. Respondent's D.C. attorney, in the short time he had available to him prior to the original hearing, made valiant efforts to locate the administrative file but stopped too short and too soon. Newark counsel, who had the case for about six months, made no more than desultory efforts to locate the file. Mr. Chalhoub, however, in checking the D.C. attorney's notes, and noting that he had previously contacted the Brooklyn disclosure officer and had a notation to the CID, telephoned again and requested that someone from Brooklyn CID telephone him directly in regard to the missing file; he knew *594 that a disclosure office would have no way of knowing which files might be in the hands of CID. It would appear that Mr. Chalhoub's almost immediate locating of the file might in and by itself show a lack of due diligence by the other searching parties. We do not, however, rest our determination herein upon Mr. Chalhoub's efficiency. Compare Giordano v. McCartney, 385 F.2d 154 (3d Cir. 1967). Rather, we must rest it upon the lack of diligence by respondent's employees in general, not only his Newark and D.C. attorneys. In arriving at our conclusion, we give due consideration to the great number of files and records for which respondent is responsible. We also give due consideration to the burden that has been placed upon these petitioners, who have been attempting since September 1985 to ascertain whether a deficiency notice was in existence and have been thwarted at every turn in their quest. Evidence is not newly discovered under Federal Rule 60 if it is in the possession of the moving party or that party's attorney prior to the entry of judgment. Taylor v. Texqas Corp., 831 F.2d 255 (11th Cir. 1987). *595 The Court in Taylor specifically rejected the notion that the fact that the movant was a large company with many employees provided it with an excuse for its failure to discover evidence at the time of the original trial. We need not determine here that respondent is held to the knowledge of each and every one of his employees; however, our conclusion is that there was a lack of due diligence on the part of respondent through his counsel and his employees in regard to locating the notice of deficiency, even though its existence was pivotal to the case. We have said that litigation must end sometime. See Koufman v. Commissioner, 69 T.C. 473, 476-477 (1977). Respondent, in his motions to revise and vacate, presented an alternative to his "newly discovered evidence" argument, that there were in existence "extraordinary circumstances" within the meaning of Federal Rule 60(b) that should cause the Court to revise and vacate. We posed the question whether rules in regard to what constitutes newly discovered evidence are different in a matter of jurisdiction. We do not consider this matter further since respondent did not make these arguments in his brief. Petitioners' *596 counsel, immediately prior to the hearing on the motions to revise and vacate, moved to bar Mr. Chalhoub from representing respondent in this matter on the ground that petitioner wished to call Mr. Chalhoub to testify as an expert witness. Respondent's position was that he did not have present another attorney prepared to present the motions. In the interest of completing the hearing, petitioners' motion was denied, but petitioners' counsel was allowed to call Mr. Chalhoub as a witness, at which time another attorney for respondent appeared in the case. Mr. Chalhoub's testimony was in regard to his discovery of the missing notice of deficiency. It did not go to the question of the due diligence of respondent's other employees and counsel in regard to the evidence. Mr. Chalhoub's testimony had already been set forth in his affidavit supporting the motions to revise and vacate and we did not, in fact, believe him to be an expert witness, despite his remarkable success in locating the missing file. Accordingly, in our discretion we saw no reason for further delaying the hearing and denied petitioners' motion to bar Mr. Chalhoub from representing respondent. Petitioner argues in *597 his brief that Mr. Chalhoub should have been disqualified. We reaffirm here our ruling at trial. For the reasons stated above, Respondent's motions to revise and vacate will be denied. Footnotes
1. Section references are to the Internal Revenue Code of 1954 as amended and in effect for the tax year at issue unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩