947 F.2d 945
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles W. MARS, Ruby G. Mars, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 90-2047.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and ROSEN, District Judge.*
 PER CURIAM.
 
 
 1
 Charles and Ruby Mars appeal the tax court's determination that certain property transactions do not constitute like-kind exchange under Internal Revenue Code § 1031 and, thus, were taxable as sales of real property. The Mars also appeal the tax court's denial of motions to revise the decision or reconsider the opinion. For the following reasons, we affirm.
 
 
 2
 The Mars acquired a piece of property in the latter part of the 1940s, and subsequently converted this property into a golf course. In November 1976, the Mars signed an option contract with Henry Hudson that gave Hudson the right to purchase the golf course property for an undisclosed amount. Hudson paid between $40,000 and $50,000 for the option.
 
 
 3
 In March 1976, the Mars signed a contract (Purchase Contract I) to sell the golf course property to Hudson for $800,000. Under the terms of Purchase Contract I, Hudson received $50,000 credit for the purchase price of the option contract. Hudson assumed the Mars' $300,000 mortgage on the property and executed a promissory note which was payable to the Mars, for the remaining $450,000. A deed of trust on the golf course property secured the promissory note. Hudson secured his payment of the promissory note with certain goods that he owned. On May 12, 1976, the Mars signed a closing statement, conveying the golf course property to Hudson by warranty deed. On May 14, 1976, the Mars signed a separate agreement that transferred the property to Hudson. After the May 14 closing, Hudson informed the Mars that he would not be able to pay the promissory note in cash. The Mars allege that they cancelled the transaction in a letter from their attorney. The letter apparently was lost and is not contained in the record. Following the alleged cancellation, however, Hudson did not reconvey the property to the Mars, nor did the Mars reinvest themselves with title to the golf course property.
 
 
 4
 On December 31, 1976, Mars agreed to buy from Hudson, three parcels of real property, referred to as the "Wilson Sporting Goods Building", the "Sky Harbor Apartments", and the "Burger Chef Restaurant". The three parcels are collectively known as the "Sky Harbor Complex". The Mars and Hudson executed the contract (Purchase Contract II). Under the terms of Purchase Contract II, the Mars agreed to pay $174,331.42 for the Wilson Sporting Goods Building and a total of $623,502.31 for the Burger Chef and Sky Harbor Apartment Complex. The payment for the Wilson Sporting Goods Building consisted of a cash payment of $50,000 upon execution of the deed. The Mars would satisfy the remaining balance for the Wilson Sporting Goods Building by assuming a debt encumbering the property in the amount of $124,331.42. The Mars and Hudson arranged a similar payment plan for the Burger Chef/Sky Harbor Apartments in which the Mars would pay $250,000 in cash upon execution of the deed. To satisfy the remaining balance, the Mars agreed to sign a promissory note for $100,000 payable to Hudson and assume a debt of $273,502.31 encumbering the property. Four warranty deeds transferring ownership of the parcels from Hudson to the Mars were signed, notarized and recorded at different times between December 31, 1976 and April 12, 1977.
 
 
 5
 On April 18, 1977, the parties executed a document entitled "Substitution of Collateral", in which the original property securing Hudson's promissory note for the golf property was released and replaced with the Burger Chef property. This action was appropriately recorded. On that same day, the Mars and Hudson exchanged receipts for $250,000. Hudson acknowledged receipt from the Mars for payment on the Sky Harbor Complex. The Mars acknowledged receipt from Hudson for payment on the golf course promissory note, leaving a balance due of $100,000.
 
 
 6
 On February 2, 1978, the Mars and Hudson again exchanged receipts. Hudson acknowledged receipt of $100,000 from the Mars for the purchase of the Burger Chef property and the Mars acknowledged receipt of $100,000 as final payment on the golf course note. Hudson's payment released the Burger Chef property from the deed of trust. The Mars signed a document acknowledging this full release from the deed of trust on April 28, 1978, stating that Hudson had paid them in full for the golf course property.
 
 
 7
 None of the deeds, notes, security agreements or receipts contained language that treated the property transfers as an exchange. The only document submitted to support the Mars' claim that the property transfers were like-kind exchanges was a letter to Hudson from a bank official referring to the transfers as a "property swap". The Mars treated the property transaction as an installment sale rather than a like-kind exchange in their federal income tax returns for the years 1976, 1977, and 1978. The Mars did not claim the property transactions constituted a like-kind exchange until the Internal Revenue Service issued a notice of deficiency based on the sales.
 
 
 8
 The Mars contested the deficiency by claiming that the property transfers were like-kind exchanges under section 1031(a). The tax court found that the Mars failed to satisfy their burden of proof that the disposition of the golf course property qualified as a like-kind exchange under section 1031(a). The court stated that where taxpayers try to avoid the form of their agreement, a higher level of proof is required. This level of proof is known as the "strong proof standard". Examining the contracts, documents, the form of the individual transactions, and the Mars' income tax returns for 1977 and 1978, the court found an absence of documentary support for the Mars' contention that the transaction was a like-kind exchange. The court also found the absence of testimony from Hudson, the party in the best position to testify about the nature of the property transfers, was particularly damaging to the Mars' case. Finally, the court found that Charles Mars' unsubstantiated and self-serving testimony was insufficient to satisfy the Mars' strong burden of proof.
 
 
 9
 After the tax court's decision, the Mars filed motions to reconsider or revise. The motions, which the Mars filed one day late, included affidavits from several parties involved in the transactions and a letter from the Mars' attorney regarding the property transaction. The tax court denied the motions without comment.
 
 I. Like-Kind Exchange
 
 10
 On review, we will not overrule a tax court's factual determinations unless we find them to be clearly erroneous. Rose v. CIR, 868 F.2d 851, 853 (6th Cir.1989). See also Louisville & N.R. Co. v. CIR, 641 F.2d 435, 438 (factual findings of tax court are subject to clearly erroneous standard of review). Factual determinations are not clearly erroneous unless this court is left with a definite and firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 11
 At trial, the Mars had the burden of proving that the property transactions qualified under section 1031(a) as a like-kind exchange. Welch v. Helvering, 290 U.S. 111, 115 (1933). For a property transfer to qualify as a like-kind exchange under section 1031(a), three requirements must be satisfied: (1) there must be an exchange; (2) the properties exchanged must be of a like kind; and (3) the property transferred and the property received must be held by the taxpayer either for use in a trade or business, or for investment. I.R.C. § 1031(a). At trial, the only dispute was whether the transactions constituted an "exchange".
 
 
 12
 In exchange cases, a transaction's form is more dispositive than its substance. Barker v. Commissioner, 74 T.C. 555, 560-61 (1980). See also Swaim v. United States, 651 F.2d 1066, 1070 (5th Cir.1981). When taxpayers seek to avoid the form of their agreement, a higher level of proof, known as the "strong proof standard," is required. Coleman v. Commissioner, 87 T.C. 178, 201-203 (1986), aff'd, 833 F.2d 303 (3d Cir.1987). See also Patterson v. Commissioner, 810 F.2d 562, 570 (6th Cir.1987); Schulz v. Commissioner, 34 T.C. 235 (1960), aff'd, 294 F.2d 52 (9th Cir.1961).
 
 
 13
 In support of their claim, the Mars presented Mr. Mars' testimony about the nature of the transactions and a letter from a bank to Hudson that referred to the transactions as a "property swap". Inexplicably, Hudson did not testify during the trial. As a third party not involved in the suit and as a primary party in the transaction in question, Hudson should have been able to provide substantially beneficial evidence for the Mars. In their motions to reconsider or revise, the Mars did not submit an affidavit from Mr. Hudson concerning the nature and intent of the property transactions in question.
 
 
 14
 In examining the record, we find that the tax court's decision was not clearly erroneous. Under the terms of Purchase Contract I, the first transaction between the Mars and Hudson was a cash sale of the property in question. While the Mars claim to have subsequently rescinded the transaction and restructured the transfers as a like-kind exchange, Purchase Contract II made no mention of Purchase Contract I, its rescission, or the intent of the parties to exchange property. Additionally, in a like-kind exchange, mutual passage of title of properties must be reciprocal. Treas.Reg. § 1.1002-1(d). In this case, the titles to the various parcels of property passed at four different times. Finally, the Mars listed the transfer of the golf course property as an installment sale on their 1977 and 1978 income tax returns. The Mars failed to establish by strong proof that the property transfers were like-kind exchanges under section 1031(a) and, thus, they have failed to meet their burden of proof. We therefore affirm the tax court's determination that the property transfers were not like-kind exchanges within the meaning of section 1031(a). The tax court correctly determined that the property transfers were taxable sales of real property.
 
 
 15
 II. Denial of Motions to Reconsider or Revise
 
 
 16
 Following the tax court's determination, the Mars submitted motions to reconsider or revise. The Mars included affidavits and other evidence that they allege to be "newly discovered." The tax court denied the motions without comment. On appeal, the Mars argue that the tax court erred in denying the motions. The Mars contend that the motions and supporting affidavits contain "newly discovered" evidence. The Mars also argue that "extraordinary circumstances" were involved in the submission of the motions and, thus, under Kraus v. CIR, 875 F.2d 597 (7th Cir.1989), the tax court abused its discretion in denying the motions.
 
 
 17
 In reviewing the tax court's denial of motions to reconsider or revise, this court must determine whether the denial was an abuse of discretion. See Louisville, 641 F.2d at 443-44 (6th Cir.1981) (tax court has broad discretion in granting or denying Rule 161 motions). Under 26 U.S.C. § 7482(a), Congress authorizes courts of appeals to review tax court decisions in the same manner and to the same extent as decisions of a district court rendered in civil actions tried without a jury. Threlkeld v. Commissioner, 848 F.2d 81, 83 (6th Cir.1988). More specifically, the tax court has held that decisions interpreting Rules 59 and 60 of the Federal Rules of Civil Procedure apply to motions for reconsideration under Rule 161 of the Rules of the United States Tax Court. Kraus, 875 F.2d at 602 (citing Wheeler v. Commissioner, 46 T.C.M. (CCH) 642 (1983)). In reviewing Fed.R.Civ.P. 60(b) motions, this court has defined abuse of discretion as a " 'definite and firm conviction that the trial court committed a clear error of judgment.' " Davis v. Jellico Community Hosp. Inc., 912 F.2d 129, 132-33 (6th Cir.1990) (quoting Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989)). A tax court should grant a Rule 161 motion for reconsideration based on newly discovered evidence when:
 
 
 18
 (1) the evidence was discovered following trial;
 
 
 19
 (2) due diligence on the part of the movant to discover new evidence is shown or may be inferred;
 
 
 20
 (3) the evidence is not merely cumulative or impeaching;
 
 
 21
 (4) the evidence is material;
 
 
 22
 (5) the evidence is such that a new trial would probably produce a new result.
 
 
 23
 Kraus, 875 F.2d at 602.
 
 
 24
 The tax court denied the Mars' motions without comment. The Mars filed the motions one day after the deadline. Ignoring the issue of tardy filing, and basing review only on the submitted affidavits, the denial of the motions is not an abuse of discretion. The Mars have failed to meet the requirements of "newly discovered" evidence. With due diligence, the Mars could have obtained several, if not all of the affidavits prior to or during the trial.
 
 
 25
 Even if the tax court granted the motions and allowed the new evidence into the record, a different outcome would not result. The affidavits do not amount to evidence that would leave this court with a "definite and firm conviction" that a mistake had been made. While the information may be probative, it would not change the outcome of the tax court's decision.
 
 
 26
 The Mars further allege "extraordinary circumstances" surrounding the filing of their motions. These circumstances include: (1) the discovery of a letter regarding the transaction from their now-deceased attorney; (2) the discovery of their son's notebook, containing notes about the transaction; (3) Mr. Mars' advanced age of 70 years and his declining health; (4) the Mars' involvement in a foreclosure proceeding against them during the course of the trial; and (5) the great distances travelled to obtain the affidavits. These facts simply do not rise to the level of "extraordinary."
 
 
 27
 The tax court's denial of the motions was well within the parameters of the broad discretion accorded to the court. The tax court did not abuse its discretion in denying the motions. Further, even if the new evidence were admitted, this court would not be left with the "firm conviction that a mistake had been made." We therefore affirm the tax court's denial of the motions to reconsider or revise. We also affirm the decision of the tax court that the property transfer was not a like-kind exchange, but instead was a taxable sale of real property.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation